IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

MICHAEL DEAN THOMPSON,  }
TDCJ-CID NO. 01199531,  }
       Petitioner,  }
v.  }      CIVIL ACTION NO. G-07-0314
   }
NATHANIEL QUARTERMAN,  }
       Respondent.  }

OPINION ON DISMISSAL

Petitioner Michael Dean Thompson, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed through counsel a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his underlying conviction for aggravated sexual assault of a child. (Docket Entry No.1). Respondent has filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under § 2254. (Docket Entry No.5). Petitioner has filed a response to the motion. (Docket Entry No.7). After a careful review of the entire record and the applicable law, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

A Texas grand jury indicted petitioner in cause number 41581, alleging that he committed aggravated sexual assault of a child in June, 2000. *Thompson v. State*, No.01-03-01287-CR, Clerk's Record at 2. A jury in the 23rd Judicial District Court of Brazoria County, Texas heard evidence of the following, as summarized below:

During the State's case-in-chief, complainant, a twelve year old girl, identified petitioner in court. *Thompson v. State*, No.01-03-01287-CR, Reporter's Record, Volume 3, page 17-18.  Complainant testified that she had previously lived in Irving, Texas, where she became friends with petitioner's children.  *Id*.  Complainant testified that she and her family moved to Arizona, but during the summer after they moved, she and her siblings spent several weeks with petitioner's family in Pearland, Texas.  *Id*. at 19-23.  She attested that one evening during that summer visit, petitioner lifted her from the couch where she had been sleeping and took her upstairs to his bedroom where he removed her panties and penetrated her vagina with his private area.  *Id*. at 34-35.  Complainant further attested that petitioner touched her private area with his hands and forced her to touch him with her hands.  *Id.* at 36.  She told him to stop but he did not stop for five minutes or longer.  *Id.*  Complainant did not observe any fluid but testified that petitioner was moving.  *Id*. at 37.  She attested that when he got off of her, he took a shower and told her to go to bed.  *Id.*  Complainant put her panties back on and went to bed.  *Id.*  She did not tell anyone because petitioner threatened to hurt her if she did.  *Id*. at 38-39.

Complainant testified that petitioner told his wife about the assault and petitioner's wife called the ex-wife of complainant's father, who informed complainant's father about the assault.  *Id*. at 39.  Complainant indicated that after they heard about the assault, her parents took her out of school and she told them what happened.  *Id.* at 39-40.  Her parents then took her to a physician who examined her private area.  *Id*. at 40.  She also spoke with someone else about the assault.  *Id*. at 40-41.

Complainant further testified that once, as she showered during a sleep-over at petitioner's home in Irving, petitioner got into the shower with her and started to touch her around

2

her vagina.  *Id.* at 29-31.  Complainant indicated that no one else had ever touched her in a sexual way.  *Id.* at 41.

Dr. Jennifer Geyer attested that her examination of complainant revealed abnormal findings on complainant's hymen, *i.e.*, two sides of the tissue were torn almost all the way down.  *Id.* at 50-51.  Geyer indicated that such abnormality was usually caused by penetrating trauma to the vagina.  *Id.* at 51.  Geyer further indicated that without a history of some type of accidental penetration, such abnormality is "fairly specific for abuse—sexual abuse."  *Id.* at 53.

Complainant's mother, Holly Dunstan ("Holly"), also identified petitioner.  *Id.* at 58-59.  She testified to the relationship between her family and petitioner's family.  *Id.* at 59-61.  Holly attested that complainant did not tell her what had happened to her in Pearland that she and her husband had to get her to tell them what had happened.  *Id.* at 64.  Holly indicated that she had heard from someone else that something had happened in the summer of 2000, and that she took complainant out of school in May, 2001, to talk about it.  *Id.* at 66-67.  Holly testified that complainant told her that petitioner "had taken her underwear off and asked her to hold his penis and told her to rub up and down."  *Id.* at 65.  She further testified that complainant said that petitioner "had gotten on top of her."  *Id.*  Holly and her husband asked complainant if "he put it in you."  *Id.* at 65-66.  When complainant responded affirmatively, she and her husband stopped the conversation.  *Id.* at 66.  Holly attested that complainant said she had not mentioned it before because she was scared that petitioner would come after her.  *Id.* at 67.

Cherie Leffler, a forensic counselor with the Mesa, Arizona police department, attested to her credentials and protocol in interviewing abused children.  *Id.* at 71-77.  She testified that on May 24, 2001, she interviewed complainant.  *Id.* at 78.

3

Thereafter the State rested.  *Id*. at 82.

During the defense's case-in-chief, petitioner's attorney cross-examined Holly.  *Id.*, Volume 4, page 2.  Holly testified that complainant's behavior was normal when she returned to Arizona from Pearland, Texas.  *Id*. at 15.  Holly testified that her husband Larry got a call from his aunt.  *Id*. at 4.  Based on that call, Larry called petitioner's ex-wife, Kristy, and then both Holly and Larry went to complainant's school and took complainant out of school.  *Id*. at 4-5.  They returned to a small efficiency motel room where they had been staying for several months.  *Id*. at 5-6.  Holly testified that their other children were at school when she and her husband spoke with complainant about the assault.  *Id*. at 7-8.  Holly indicated that they really had 'to pry it out' of complainant to get her to tell them about the assault.  *Id*. at 17.

Holly acknowledged that she told the Arizona police that her husband did most of the talking.  *Id*. at 8-9.  Holly attested that her husband Larry asked complainant if petitioner made her touch him and if petitioner touched her.  *Id*. at 12.  She further attested that Larry asked complainant if petitioner put his private part into her private part.  *Id*. at 13.  Holly acknowledged that complainant answered yes to all of her father's questions.  *Id*.  Holly indicated that to her knowledge, complainant had not told anyone other than Ms. Leffler and the district attorney's office about the assault.  *Id*. at 13-14.  Holly attested that her other children did not know anything about the assault.  *Id*. at 14.  Holly indicated that it was not possible for anyone else to have overheard their conversation with complainant.  *Id*. at 17.

Complainant also testified on cross-examination that she told the prosecutors, Cherie Leffler, and her parents about the assault.  *Id*. at 26-27.  Complainant testified that petitioner was at the house most of the time that she was in Pearland.  *Id*. at 29.  She recounted the day that she told her parents about the assault.  *Id*. at 32.  Complainant indicated that when

4

her dad first asked if anything happened she told him no. *Id.* Complainant responded affirmatively when defense counsel asked her if her dad told her that he knew that petitioner had put his private part inside her private part and that he knew that petitioner had touched her private parts. *Id.* at 33. On re-direct, she indicated that her father had questioned her about the assault and that he had not told her that petitioner had done those things to her. *Id.* at 50. Complainant indicated that her parents had finished their conversation with her before her siblings returned home from school. *Id.* at 35.

Petitioner's trial counsel further questioned complainant about a man she said was visiting petitioner on the night of the incident and about the events leading up to the assault. *Id.* at 37-41. Complainant testified that no one told her to lie and she would not lie about petitioner. *Id.* at 50.

Counselor Leffler reluctantly testified under pressure from petitioner's trial counsel that complainant's younger sister overheard a conversation between complainant and her father and that she had knowledge that complainant had been touched inappropriately. *Id.* at 59-60.

Petitioner testified that he did not have a criminal record. *Id.* at 62. He further attested that he worked in the Dallas area in June, 2000 and that he returned to Pearland on the weekends. *Id.* at 63. Petitioner affirmatively denied that he assaulted complainant. *Id.* at 65. Petitioner attested that on the weekend that his wife left him with complainant and her siblings, his cousin, Clay Martin, spent the night at his home. *Id.* at 67-68.

Clay Martin testified that he spent the night in the living room of petitioner's house on the Saturday night that petitioner's wife was gone. *Id.* at 70. Martin indicated on cross-

5

examination that he did not go to the police with this information.  *Id*. at 72.  Thereafter, the defense rested.  *Id*. at 77.

After deliberation, the jury found petitioner guilty as charged.  *Id*., Volume 5, page 2; Clerk's Record, page 202.

During the punishment hearing, jurors heard testimony from several young women, including petitioner's cousin, who attested that petitioner had sexually assaulted them. *Id.* at 5-39.  The jury also heard testimony from numerous friends and family members who expressed doubt about the jury's verdict, attested to petitioner's good character, and promised to help petitioner if he were granted a probated sentence.  *Id.* at 39-96.  After deliberations, the jury returned with a life sentence.  *Id*. at 125; Clerk's Record, page 202.

On direct appeal, petitioner sought relief on the ground that the evidence was legally insufficient to support the conviction because the evidence failed to establish venue for the offense in Brazoria County, Texas.  *Thompson v. State*, No.01-03-01287-CR, 2005 WL 375445 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (not designated for publication).  In affirming the judgment, the intermediate state appellate court found sufficient evidence to support the conviction based on complainant's stipulation "that the home marked State's exhibit one is located wholly within the incorporated city limits of Pearland, Brazoria County, Texas." *Id*.  The Texas Court of Criminal Appeals refused his petition for discretionary review ("PDR"). (Docket Entry No.1).

Petitioner, through counsel, filed a state habeas application, seeking relief on grounds that he was denied the effective assistance of counsel at trial and on appeal.  *Ex parte Thompson*, Application No.WR-66,149-01, pages 7-117.  The state district court entered Findings of Fact and Conclusions of Law and recommended that relief be denied.  *Id*. at 153-

6

161.  On February 7, 2007, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing.  *Id*. at inside cover.

In the pending petition, petitioner seeks federal habeas relief on the following grounds:

1. Petitioner was denied the effective assistance of counsel at trial because counsel stipulated to venue and failed to:

   a.  Voice an objection to an extraneous offense involving complainant;

   b.  Cross-examine the State's medical expert and challenge her opinion that the abnormality observed was specific for sexual abuse;

   c.  Object to the court's charge on the ground that it included a comment on the evidence as to an element of the offense;

   d.  Present evidence from a psychologist at the punishment phase of trial;

   e.  Object to a prejudicial question at the punishment phase;

   f.  Object to improper argument at the punishment hearing because it was intended to strike petitioner over the shoulders of defense counsel;

   g.  Object to improper argument urging the jury to apply the parole laws when assessing punishment;

   h.  Object to improper argument commenting on petitioner's failure to testify at the punishment hearing; and,

   i.  Object to improper argument informing the jury of complainant's desire for a life sentence.

2. Petitioner was denied the effective assistance of counsel on appeal because appellate counsel failed to raise on appeal a meritorious ground that the trial court's charge to the jury included a comment on the evidence as to an element of the offense.

(Docket Entry No.1).

Respondent moves for summary judgment on grounds that petitioner has failed to meet his burden of proof and that his claims are without merit.  (Docket Entry No.5).

## II. STANDARD OF REVIEW

### A. Summary Judgment

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the trial court's findings without a hearing. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner on a petition for discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v.*

*Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*

Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel at Trial

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692)).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 1. Guilt-Innocence Phase of Trial

Petitioner complains that his trial counsel rendered constitutionally deficient performance during the guilt-innocence phase of trial by stipulating to evidence of venue, and by failing to (a) cross-examine the State's medical expert, (b) object to testimony of an extraneous offense, and (c) object to the jury charge.  (Docket Entry No. 1).  Petitioner's trial counsel and the prosecutor both submitted affidavits, which the state habeas courts noted.  *Ex parte Thompson*,

Application No.WR-66,149-01, pages 154-57.   The state habeas courts found, with one exception, that petitioner's trial counsel's performance was not constitutionally deficient.   *Id.*   The state habeas courts further found that in every case, petitioner failed to show that he was prejudiced by his counsel's performance.   *Id.*   The record supports the state habeas courts' findings.

a. Stipulation of Evidence

Petitioner contends that his trial counsel's performance was deficient because counsel stipulated to the venue even though the State was required to prove by a preponderance of the evidence that the alleged assault took place in Brazoria County, Texas.   (Docket Entry No.1).   Petitioner complains that venue was a contested issue because complainant testified that she thought she was in Houston when she visited petitioner and his family; therefore, any stipulation to the venue was of no benefit to petitioner.   (*Id.*).   Moreover, he complains, the state intermediate appellate court relied on the stipulation in rejecting petitioner's insufficiency challenge on direct appeal.   (*Id.*).

Both the prosecutor and petitioner's trial counsel attested on state habeas review that there was sufficient evidence of venue and the State had additional evidence they intended to proceed with.   *Ex parte Thompson*, Application No. WR-66,149-01, pages 140, 148.   Petitioner's trial counsel further attested that "we stipulated to venue in an effort to gain credibility with the jury" and because one of the witnesses the State could have called might have testified in other areas that would have been damaging to petitioner.   *Id.* at 148.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."   *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).   The

13

record here reflects no unfairness with respect to the stipulation of venue; therefore, counsel's concession tactic may have been the best available. Petitioner has not shown deficiency or prejudice in the requisite degree that would overcome the state habeas courts' findings.

### b. Failure to Cross-Examine Medical Expert

Petitioner complains that his trial counsel failed to cross-examine the State's medical expert and challenge her opinion that the abnormality observed in complainant's hymen was specific for sexual abuse. (Docket Entry No.1). Petitioner claims that he requested counsel to challenge Dr. Geyer's testimony but counsel declined because in his opinion, "the matter would simply constitute a battle of the experts." (*Id.*). Petitioner claims that counsel should have explored Geyer's qualifications and questioned her about the lack of photo-documentation supporting her observations, and about the science supporting her findings. (*Id.*).

Petitioner's trial counsel attested that he did not cross-examine Dr. Geyer because such questioning did not fit with their trial strategy, which was that complainant may have been molested but not by petitioner. *Ex parte Thompson*, Application No.WR-66,149-01, page 148. Trial counsel indicated "[t]here was evidence of a credible alternative suspect." *Id.* He noted that to cross-examine Dr. Geyer would have detracted from their defensive theory and undermined his credibility before the jury. *Id.* Counsel indicated that petitioner approved of this strategy before trial and that he and petitioner had decided that hiring an expert to rebut Geyer's testimony would be contrary to their theory of the case. *Id.*

The record here does not reflect that trial counsel's theory that someone other than petitioner committed the assault and his strategic decision not to cross-examine Dr. Geyer or challenge her findings (because to do so would not support such theory) was so ill-chosen that it permeated petitioner's entire trial with obvious unfairness. Petitioner has not shown that the

state's habeas court's findings of no deficiency or prejudice were unreasonable applications of federal law.

### c. Failure to Object to Extraneous Offense

Petitioner contends his trial counsel's performance was deficient because he did not object to complainant's testimony regarding an extraneous sexual assault that petitioner committed in Irving, Texas, during a sleep-over at petitioner's home.   (Docket Entry No.1). Petitioner contends that assuming such testimony was admissible under Article 38.27 of the Texas Code of Criminal Procedure, trial counsel should have objected to the admission of such testimony in order to force the state district court to conduct the proper balancing test pursuant to Rule 403 of the Texas Rules of Evidence.  (*Id.*).

'[C]ounsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Trial counsel attested that he did not object because the extraneous offense evidence was admissible pursuant to Article 38.27 and he believed that a Rule 403 objection would not be sustained.  *Ex parte Thompson*, Application No.WR-66,149-01, page 148.  Counsel attested that he did not believe the state district court would find unfair prejudice and he did not want to draw the jury's attention to the extraneous offense.  *Id.*

Petitioner contends that petitioner's responses are not indicative of sound trial strategy because a Rule 403 hearing would have been conducted outside the jury's presence and the prospect that an objection would not be sustained is not a legitimate reason for failing to object when the law recognizes a sound basis upon which to complain.  (Docket Entry No.1).  He points out the state district court was concerned about the admissibility of the evidence because it gave a *sua sponte* limiting instruction to the jury.  (*Id*.).

15

Petitioner, however, fails to show that such evidence was inadmissible or that he was prejudiced by the admission of such evidence, particularly in light of the limiting instruction, because he fails to show that such objection would have resulted in a different outcome at trial. *See Strickland*, 466 U.S. at 692.   Accordingly, petitioner has not shown that the state courts unreasonably applied federal law in rejecting this ineffective-assistance claim.

### d. Failure to Object to Jury Charge

Petitioner also complains that his trial counsel failed to object to a defect in the jury charge, where the charge instructed the jury of complainant's age and birth-date.  (Docket Entry No.1).  Petitioner contends such instruction is an improper comment on the evidence because it dispenses with the need for the State to prove an element of the offense.  (*Id.*).

Petitioner's trial counsel attested that he did not object to the sentence in the charge that stated that "the victim's 18th birthday is December 30, 2008," because the wording did not affect their trial strategy, "which was that another individual committed this crime." *Ex parte Thompson*, Application No. WR-66,149-01, page 149.  Trial counsel concedes that in hindsight, he should have objected.  *Id.*

The state habeas courts noted the attestations of petitioner's trial counsel and concluded that his performance may have deviated from prevailing professional norms but that petitioner had failed to show prejudice.  *Id.* at 157.  The state habeas courts correctly noted that "[t]he victim's age was not contested and the evidence that the victim was 'younger than 14 years of age' was overwhelming." *Id.*  The record supports the state habeas courts' findings regarding petitioner's failure to show prejudice.

### 2. Punishment Phase of Trial

Petitioner maintains that his trial counsel rendered constitutionally ineffective assistance of counsel during the punishment phase of trial by failing to (a) present mitigating evidence from a psychologist, (b) object to a prejudicial question, and (c) object to several improper jury arguments. (Docket Entry No.1). Petitioner's trial counsel and the prosecutor both submitted affidavits, which the state habeas court noted. *Ex parte Thompson*, Application No.WR-66,149-01, pages 154-57. Relying on the affidavits of petitioner's trial counsel, the state habeas courts found, with one exception, that trial counsel's performance was not constitutionally deficient and that in every instance, petitioner failed to show that he was prejudiced. *Id.* The record supports the state habeas courts' findings.

### a. Failure to Present Mitigating Evidence

Petitioner contends that trial counsel failed to present mitigating evidence relevant to petitioner's suitability for community supervision via the testimony of Psychologist Jerome B. Brown, who had examined petitioner in connection with a family law dispute. (Docket Entry No.1). Although petitioner requested that counsel call Brown to testify during the punishment hearing, trial counsel refused to honor such request. (*Id.*).

Petitioner's trial counsel attested that he did not call Brown to testify because he "believed the harm in his testimony would outweigh any benefit." *Ex parte Thompson*, Application No.WR-66,149-01, page 150. Counsel indicated that "[t]he Doctor could potentially testify about my client's drug use, that his wife previously accused him of pedophilia, and violence toward the wife." *Id.* Counsel further indicated that he "believed that calling this witness would open the door to the admission of hundreds of images of child pornography which had been found on the defendant's computer," which had not been admitted at trial. *Id.*

17

Counsel's failure to present mitigating evidence relating to defendant's psychiatric evaluation does not constitute deficient performance where such evidence would have opened the door to otherwise excluded evidence. *See Darden v. Wainwright*, 477 U.S. 168, 184-87 (1986). While Dr. Brown's report in the state habeas record presents a favorable view of petitioner's psychological health, it also references his use of illegal drugs and claims asserted by petitioner's ex-wife regarding pedophilia and violence. *Id.* pages 96-102. Petitioner presents nothing to overcome the state habeas courts' findings that such conduct was not deficient or prejudicial.

### b. Failure to Object to Prejudicial Testimony

Petitioner complains that trial counsel failed to object to the prosecutor's question during cross-examination of petitioner's aunt regarding whether petitioner's personal checks contained the notation, "I love children." (Docket Entry No.1). Petitioner maintains the checks do not contain such notation; they state, "I love my children." (*Id.*). Petitioner complains that trial counsel made no objection to the question and did not attempt to correct the matter on re-direct. (*Id.*).

Petitioner attested that he did not remember why he did not object to this question. *Ex parte Thompson*, Application No.WR-66,149-01, page 150. He noted that petitioner's aunt testified that she did not know what was on petitioner's checks. *Id.*

The state habeas courts found that trial counsel's performance may have deviated from prevailing professional norms by his failure to object to the question, but petitioner had failed to show prejudice. *Id.* at 158. The record supports the state habeas courts' findings and petitioner presents nothing to overcome such finding.

### c. Failure to Object to Inappropriate Jury Arguments

18

Petitioner complains that his trial counsel failed to object to the prosecutor's argument that counsel was requesting community supervision because trial counsel thought the jury's verdict from the guilt-innocence phase of trial was wrong. (Docket Entry No.1). Petitioner contends that such argument was an attack on petitioner over the shoulder of his counsel and that such argument unfairly inflamed the jury against him. (*Id.*).

The prosecutor argued that the following, in pertinent part: "And there are some cases where probation may be an appropriate consideration, and this is not one of those cases. They are bidding you real low, and the reason they are doing that is they think you are wrong. . . . They want you to sentence him as if he's not really guilty. Pretend like he didn't do anything and then decide what the sentence should be." *Thompson v. State*, No.01-03-01287-CR, Reporter's Record, Volume 5, pages 111-115. Shortly thereafter, the prosecutor referred to petitioner's testimony during the guilt-innocence phase of trial, wherein petitioner testified that he did not sexually assault complainant. *Id.* at 115.

Petitioner's trial counsel attested that he did not object because he did not believe the prosecutor's argument was improper. *Ex parte Thompson*, Application No.WR-66,149-01, page 150. Trial counsel noted that he asked several witnesses at trial whether "we" accept the jury's verdict; therefore, he felt the issue had been covered. *Id.*

In light of petitioner's testimony during the guilt-innocence phase of trial that he did not sexually assault complainant ant the many defense witnesses who requested the jury to give petitioner a probated sentence, the prosecutor's statement does not appear to be a direct attack on defense counsel or an attack on petitioner "over the shoulder" of defense counsel. Moreover the statement does not appear inflammatory such that it would invoke emotions within the jurors that could cloud the proper determination of petitioner's sentence.

19

Petitioner also complains that his trial counsel failed to object to argument that commented on petitioner's failure to testify during the punishment phase of trial.  Petitioner claims that the prosecutor commented on such failure when he argued that community supervision should only be available to those who admit they have done something wrong. (Docket Entry No.1).

Petitioner's trial counsel attested that he did not believe that the prosecutor's statement was a comment on petitioner's failure to testify at the punishment hearing.  *Ex parte Thompson*, Application No.WR-66,149-01, page 151.  Counsel felt, if anything, the statement was in reference to petitioner's statements during the guilt-innocence phase of trial.  *Id.*  As previously discussed, the record reflects that the prosecutor's comments referenced petitioner's testimony during the guilt-innocence phase of trial.

Petitioner further complains that his trial counsel failed to object to argument urging the jury to apply the law of parole when assessing punishment.  (Docket Entry No.1). The prosecutor argued without objection, as follows, in pertinent part:

> Under the applicable law in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed for 30 years, whichever is less because that's how you should start calculating how much time you want this man to spend in prison.
>
> What that means to you is if you come back with sentence of 60 years or more, then the defendant will not be eligible for parole until he has served 30 years.  If you say life, 99 years, 98, 97, 96, down to 60, he has to serve 30 years before he's eligible for parole; and then ask yourself:  Will I be comfortable?  Will the little girls of this county and this community be safe?  At least for 30 years.
> A bunch of that page tells you that there is [sic] parole laws out there and the parole authorities calculate whether he gets any good time.  What you need to know about that is he has to serve at least half of the time that you sentenced him to; and if it's 60 years or more, he as to serve 30 years.  Then you will know at least for those 30 years, the kids in the county are safe.

20

*Id.*, Reporter's Record, Volume 5, pages 113-14.

Petitioner's trial counsel attested that he did not object because he did not want to emphasize the parole laws. *Ex parte Thompson*, Application No.WR-66,149-01, page 150. Trial counsel indicated that had he voiced such an objection, the state district judge's actions would have emphasized the parole issue. He claimed the judge might have (a) asked the phrase to be repeated so that he could make a ruling, (b) called a conference of the attorneys regarding the argument, (c) sustained the objection and given a curative instruction, which would require trial counsel to seek a mistrial. *Id.* Consequently, trial counsel attested that he decided not to object. *Id.*

The state habeas courts found the actions of petitioner's trial counsel were reasonable trial strategy and that he did not deviate from professional norms by this conduct. *Id.* at 159. The state habeas courts further found that petitioner had failed to show that he was prejudiced. *Id.*

Under state law, the prosecutor's argument, applying the parole formula specifically to petitioner, was improper. *See Perez v. State*, 994 S.W.2d 233, 237 (Tex. App.—Waco 1999, no pet.). The jury charge, however, admonished the jury "not to consider the manner in which the parole law may be applied to this particular defendant." *Thompson v. State*, No.01-03-01287-CR, Clerk's Record, page 191. Petitioner presents nothing to overcome the presumption that the jury did not follow the court's instructions; therefore, he fails to show that he was prejudiced by trial counsel's failure to object to the improper argument. *See Colburn v. State*, 966 S.W.2d 511, 519-20 (Tex. Crim. App. 1998). Moreover, a counsel's decision to abstain from raising objections to avoid drawing additional attention or an argument or evidence

is considered reasonable strategy.  *See Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003).

Finally, petitioner complains that his trial counsel failed to object to jury argument informing the jury of complainant's desire that petitioner should get a life sentence. (Docket Entry No.1).  Petitioner maintains the argument was objectionable because there was no evidence of complainant's punishment wishes admitted at trial.  (*Id.*).  The prosecutor argued in his final closing argument, as follows, in pertinent part:

> So, we ask you and [complainant] asks you and her family asks you to look at your charge, look at the verdict form that says:  We, the jury, find the defendant, Michael Dean Thompson, guilty of the offense of Aggravated Sexual Assault of a Child, assess his punishment at confinement in the penitentiary for a term of–and there is a blank there.
>
> Now, we know that [complainant] likes math.  She told us that.  That came up several times, but I don't want you to worry about numbers.  [Complainant]  wants you to put a word there, life.

*Thompson v. State*, No.01-03-01287-CR, Reporter's Record, Volume 5, page 123.

Petitioner's trial counsel attested that he did not object because it was a concluding remark and he did not "believe it was improper the way it was phrased."  *Ex parte Thompson*, Application No.WR-66,149-01, page 151.  The state habeas court found no deficiency and that petitioner failed to show prejudice.  *Id.* at 159.

The record shows that the prosecutor's entire argument was a plea to the jury to give petitioner a life sentence because the evidence before the jury showed that he deserved it. Although improper, the argument most likely would constitute harmless error under state law. *See Dorsey v. State*, 709 S.W.2d 207, 210 (Tex. Crim. App. 1986) (noting that "[attitudes of a victim in regard to their assailant's punishment are entirely too subjective and personal to be speculated on with any degree of accuracy by the prosecutor.  If a prosecutor wants to argue that

22

a victim desires his or her assailant incarcerated, then these facts need to be in evidence"); *Martinez v. State*, 17 S.W.3d 677, 693 (Tex. Crim. App. 2000) (noting degree of prosecutorial misconduct regarding analogous argument, if any, was relatively mild).  Petitioner presents no evidence to show that the jury relied on the prosecutor's reference to complainant's desire in deciding his sentence; therefore, he fails to show that he was prejudiced by his counsel's failure to object.

Accordingly, petitioner fails to show that the state courts' findings regarding the effectiveness of his trial counsel are contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

### B. Ineffective Assistance of Counsel on Appeal

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Murray*, 477 U.S. 527 (1986).  To establish that appellate counsel's performance was deficient in the context of an appeal, petitioner must first show that his attorney was objectively unreasonable in failing to find arguable issues to appeal, *i.e.*, counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Petitioner must then demonstrate that he was actually prejudiced by his counsel's errors.  *Id.* at 285-286; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  To establish actual prejudice, petitioner must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal."  *Robbins*, 528 U.S. at 285.

Petitioner contends that his appellate counsel was deficient because he failed to raise a meritorious ground on direct appeal regarding a deficiency in the jury charge, *i.e.*, the

23

charge contained a comment on the evidence by the instruction noting complainant's age and date of birth.  (Docket Entry No.1).  Petitioner complains that although no objection was raised to the comment, the issue could have been raised on direct appeal and analyzed under an egregious harm standard.  (*Id.*).

The record reflects that in the abstract portion of the charge, the Court instructed the jury, as follows:

> You are further charged as the law in this case alleging Aggravated Sexual Assault of a Child, that the State is not required to prove the exact dates alleged in the indictment but may prove the offense, if any, to have been committed any time prior to the filing of the indictment so long as said offense, if any, occurred within ten (10) years of the eighteenth (18th) birthday of the victim of the offense. In this cause the victim's 18th birthday is December 30, 2008.

*Thompson v. State*, No.01-03-01287-CR, Clerk's Record, page 182.

The state habeas courts found that petitioner's appellate counsel did not believe the error was egregious; therefore he did not raise the issue on appeal.  *Ex parte Thompson*, Application No.WR-66,149-01, page 160.   The state habeas court concluded that petitioner's appellate counsel was not ineffective in representing petitioner on appeal.  *Id.*

Appellate counsel is not required to present patently frivolous and arguments on appeal, or even to present all non-frivolous points that could have been raised.  *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).  As previously discussed, complainant's age was not contested and the overwhelming evidence showed that she was a minor.  Petitioner presents no evidence to show that he was prejudiced by the failure of his appellate counsel to raise such issue on appeal.  Accordingly, he fails to show that the state courts' findings are contrary to, or an unreasonable application of clearly established federal law.

Respondent is entitled to summary judgment on petitioner's ineffective assistance of counsel claims.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).   Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).   On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.      Respondent's motion for summary judgment (Docket Entry No. 5) is GRANTED.

2.      Petitioner's claims against respondent are DENIED, and the habeas action
        is DISMISSED with prejudice.

3.      All pending motions, if any, are DENIED.

4.      A certificate of appealability is DENIED.


SIGNED at Houston, Texas, this 19th day of August, 2008.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE